KOHMESCHER, APPELLANT, *v.* KROGER COMPANY, APPELLEE.

[Cite as *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501.]

(No. 90–993—Submitted March 12, 1991—Decided August 21, 1991.)

*Tobias & Kraus, Paul H. Tobias* and *Willard L. Harvey,* for appellant.

*Robert G. Stachler* and *Thomas R. Schuck,* for appellee.

*Spater, Gittes, Schulte & Kolman, Frederick M. Gittes* and *Louis A. Jacobs,* urging reversal for *amicus curiae,* National Employment Lawyers Association.

SWEENEY, J.  In his complaint before the court of common pleas, plaintiff alleged that Kroger forced him to retire without just cause and that Kroger discriminated against him on account of his age (sixty years) in violation of R.C. 4101.17.[1]  The issue presented for our determination is whether summary

---

1.  R.C. 4101.17 provided as follows:

"(A) No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee between the ages of forty and seventy who is physically able

judgment was properly granted in favor of Kroger and against plaintiff. For the reasons that follow, we answer such inquiry in the negative, and therefore reverse the judgment of the court of appeals below and remand the cause to the trial court for further proceedings.

A clear reading of R.C. 4101.17 indicates that it was enacted by the General Assembly in order to permit a civil cause of action for aggrieved employees to redress claims of age discrimination.[2]  See *Morris v. Kaiser Engineers, Inc.* (1984), 14 Ohio St.3d 45, 14 OBR 440, 471 N.E.2d 471.  In *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807, this court held in the first paragraph of the syllabus:

"In order to establish a prima facie case of age discrimination, violative of R.C. 4101.17, in an employment discharge action, plaintiff-employee must demonstrate (1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class.  Defendant-employer may then overcome the presumption inherent in the prima facie case by propounding a legitimate, nondiscriminatory reason for plaintiff's discharge.  Finally, plaintiff must be

---

to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.

"(B) Any person between the ages of forty and seventy discriminated against in any job opening or discharged without just cause by an employer in violation of division (A) of this section may institute a civil action against the employer in a court of competent jurisdiction.  If the court finds that an employer has discriminated on the basis of age, the court shall order an appropriate remedy which shall include reimbursement to him for the costs, including reasonable attorney fees, of the action, or to reinstate the employee in his former position with compensation for lost wages and any lost fringe benefits from the date of the illegal discharge and to reimburse him for the costs, including reasonable attorney fees, of the action.  The remedies available under this section are coexistent with remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code; except that any person instituting a civil action under this section is, with respect to the practices complained of, thereby barred from instituting a civil action under division (N) of section 4112.02 of the Revised Code or from filing a charge with the Ohio civil rights commission under section 4112.05 of the Revised Code.

"(C) The cause of action described in division (B) of this section and any remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code shall not be available in the case of discharges where the employee has available to him the opportunity to arbitrate the discharge or where a discharge has been arbitrated and has been found to be for just cause."  H.B. No. 230, 138 Ohio Laws, Part I, 2268.

The current version of R.C. 4101.17(A) protects any "employee aged forty or older."

2.  Without the benefit of a legislative history, it appears that R.C. 4101.17 was amended by the General Assembly in 1978, Am. Sub. H.B. No. 598, 137 Ohio Laws, Part II, 3062, in response to this court's decision in *Fawcett v. G.C. Murphy & Co.* (1976), 46 Ohio St.2d 245, 75 O.O.2d 291, 348 N.E.2d 144, where it was held that a violation of R.C. 4101.17 by an employer did not give rise to a civil action for damages.  See *Venezia v. Scovill, Inc.* (S.D.Ohio 1983), 592 F.Supp. 3, 6; and *Garry v. TRW, Inc.* (N.D.Ohio 1985), 603 F.Supp. 157, 160.

allowed to show that the rationale set forth by defendant was only a pretext for unlawful discrimination."

The *Barker* test for determining the establishment of a prima facie cause of action in age discrimination was a direct adaptation of the evidentiary standards and guidelines established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, which concerned redress of discriminatory employment practices involving race. In *Plumbers & Steamfitters Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128, this court adopted the *McDonnell Douglas* standards for cases brought under R.C. 4112.02. In *Barker, supra,* this court approved and slightly modified the *McDonnell Douglas* standards to fit a claim of age-based wrongful discharge.

A review of the record below indicates that the court of appeals affirmed the summary judgment in favor of Kroger because it believed that plaintiff could not satisfy the second and fourth prongs of the *Barker* guidelines. In our view, however, the focus of the court below in implementing a strict interpretation of the *Barker* guidelines has unfortunately caused it to lose sight of the ultimate inquiry of an action brought pursuant to R.C. 4101.17, *i.e.,* whether evidence of age discrimination is present in the case. We believe that plaintiff has presented what can be characterized as direct evidence of age discrimination sufficient to overcome Kroger's motion for summary judgment. Such direct evidence took the form of Klocke's written response to Kroger's requested implementation of its reduction in force ("RIF"). In recommending that plaintiff be selected for the RIF, Klocke clearly indicated that plaintiff was selected because he was "eligible for (the) retirement window." By strictly applying the *Barker* standards to the facts *sub judice,* however, the courts below virtually ignored this clear, direct evidence of age discrimination that made the granting of summary judgment in favor of Kroger unwarranted.

Research indicates that the *McDonnell Douglas* standards borrowed in *Barker, supra,* were never intended to be applied strictly. As Chief Justice (then Justice) Rehnquist noted in *U.S. Postal Service Bd. of Governors v. Aikens* (1983), 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403, 410: "The prima facie case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.' *Furnco [Constr. Corp. v. Waters* (1978), 438 U.S. 567,] * * * at 577 [98 S.Ct. 2943, at 2949, 57 L.Ed.2d 957, at 967]." See, also, *McCorstin v. United States Steel Corp.* (C.A.5, 1980), 621 F.2d 749.

Moreover, as the high court stated in *Trans World Airlines, Inc. v. Thurston* (1985), 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523, 533, with respect to an action brought pursuant to the federal Age Discrimination in Employment Act of 1967 (Section 621 *et seq.*, Title 29, U.S.Code): " * * * the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination. See *Teamsters v. United States*, 431 U.S. 324, 358 [97 S.Ct. 1843, 1866, 52 L.Ed.2d 396, 429], n. 44 (1977). The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.' *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (CA1, 1979)."

We agree with the reasoning employed in the foregoing cases and find that strict application of the *Barker* guidelines has led courts to overlook the ultimate inquiry in age discrimination cases, *i.e.*, whether plaintiff was discharged on account of age. Here, it is evident that the courts below were distracted from making such an ultimate inquiry, even though direct evidence of age discrimination was present. Given the rigid, mechanized and somewhat ritualistic application of *Barker, supra,* by the courts below, we find that *Barker* should be slightly modified in order that its guidelines will be correctly applied in R.C. 4101.17 actions in only those situations where direct evidence of age discrimination is not readily discernible. As the court stated in *Barnes v. GenCorp., Inc.* (C.A.6, 1990), 896 F.2d 1457, 1464: " * * * the importance of the *McDonnell Douglas* 'test' is its discussion of the elements a plaintiff must prove to establish a prima facie case of discrimination *absent direct, circumstantial, or statistical evidence of discrimination.*" (Emphasis added.) See, also, *Rose v. Natl. Cash Register Corp.* (C.A.6, 1983), 703 F.2d 225, 227:

" * * * the ultimate burden borne by a plaintiff in an age discrimination action is that of proving 'he was discharged because of his age.' *Laugesen [v. Anaconda Co.* (C.A.6, 1975), 510 F.2d 307] * * * at 313.

" * * *

" * * * To say that a plaintiff has established a *prima facie* case is simply to say that he has produced sufficient evidence to present his case to the jury, *i.e.* he has avoided a directed verdict. * * * "

Therefore, based on all of the foregoing, we modify the first sentence of paragraph one of the syllabus in *Barker, supra,* and hold that absent direct evidence of age discrimination, in order to establish a prima facie case of a violation of R.C. 4101.17 in an employment discharge action, a plaintiff-employee must demonstrate (1) that he or she was a member of the statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the

discharge permitted the retention of, a person not belonging to the protected class. Under this modified standard, it should be abundantly clear that direct evidence of age discrimination will be sufficient to establish a prima facie case.

Notwithstanding the foregoing, we further hold that summary judgment was improperly granted in favor of Kroger because of the existence of a genuine issue of material fact over whether plaintiff's retirement was voluntary. Under the record developed below, plaintiff asserts that his retirement was tantamount to a discharge and was by no means voluntary, since he was given such a short period of time to decide whether he would accept a transfer to an undisclosed position in an unknown location in California or opt for retirement with enhanced benefits. Kroger disputes plaintiff's contentions in this vein, and argues that plaintiff's acceptance of early retirement was knowing and voluntary. In our view, reasonable minds can come to more than one conclusion in light of such conflicting evidence and testimony. Under these circumstances, we find that summary judgment in favor of Kroger was clearly erroneous.

Accordingly, we reverse the judgment of the court of appeals and remand the cause for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

HOLMES, J., dissenting. In its rush to carve out new employment law in Ohio, the majority has cast aside legal reason as well as legal rule. The result-oriented majority opinion arrives at its conclusion only by disregarding the appropriate application of Civ.R. 56, which rule had properly been applied by the trial court in granting summary judgment to Kroger Company, and properly applied upon review by the court of appeals.

The court of appeals, in reviewing the evidence before the trial court, applied the law of *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807, and determined that the plaintiff had not presented a prima facie case of age discrimination in that the plaintiff had not been discharged from his position with Kroger and, second, in that the plaintiff had not been replaced by a person not belonging to the protected class.

The majority now reverses the court of appeals, not on the basis that the lower court improperly applied the law of *Barker v. Scovill,* but upon the basis that a new element can now be substituted for the test for determining

whether a prima facie case of age discrimination has been made by the plaintiff, that new element being any direct evidence of age discrimination, no matter how tenuous. This newly adopted test is that even the slightest bit of evidence of age discrimination adduced by the plaintiff obviates the necessity to prove that the plaintiff was discharged, or the necessity to prove that the plaintiff was replaced by a person not belonging to the protected class. All that the majority now requires in order to make out a prima facie case is *any* direct evidence—a strange evidentiary standard indeed to raise a presumption of discrimination.

Contrary to appellant's and *amicus's* arguments, the court of appeals neither looked at the evidence in a stilted manner, nor applied *Barker* in a limited or strict sense. The material presented to the trial judge upon motion for summary judgment was voluminous, and soundly supported the court's determination that there was no age discrimination in that there was no discharge, and that there was no evidence of the plaintiff's being replaced by a person who was not within the protected class.

The facts before the trial court upon motion for summary judgment were that the plaintiff was employed at Wesco Foods, a subsidiary of the Kroger Company in Cincinnati, Ohio. His job title was produce sales manager. Plaintiff worked with three other men whose job title was produce procurement manager. Plaintiff's position was rated lower on the employee position scale than these three other positions. Also, plaintiff's job performance rating was lower than these other three men. In 1983 and 1984 Kroger's management instituted a comprehensive analysis of their costs and operations in an effort to reduce expenses of the company operations with the least overall adverse effect upon the business and its employees.

After analysis, the management group determined that the appellant's produce sales manager position would be eliminated, and that his work would be distributed to the other three employees who held higher level positions and who had been rated more highly than the plaintiff. According to this evidence, these were all management decisions based upon job specification and performance data.

This data, upon which Kroger's agents determined which employees to lay off, was enough for granting Kroger's motion for summary judgment. However, the facts before the trial court additionally show that there was no discharge of the plaintiff. When the management team determined that there needed to be an elimination of a number of positions, including that of the plaintiff, he was given a number of alternatives that he could have voluntarily chosen. Plaintiff was informed that he could take early retirement with

significantly enhanced benefits,[3] but this option had to be exercised on or before February 11, 1984. He was also given the option to separate from the company and receive his normal vested benefits, or to transfer within the company to another city in California or Florida. It appears that the plaintiff was willing to move to Florida, but it later developed that the man whom he was to replace in Florida decided to stay on and not take early retirement, and the company so informed plaintiff on February 10, 1984. The options available to the plaintiff at this point were separation with regular vested benefits, early retirement with enhanced benefits, or staying with the company and moving to California. The plaintiff and his wife discussed the alternatives and decided that he would take early retirement. He did so orally on February 11 and by executing a written retirement election form the following week.

Plaintiff executed a retirement election disclosure statement on May 17, 1984, which described plaintiff's benefits and states in pertinent part that "I have elected to participate in the Special Retirement Program for which I am eligible." Plaintiff also elected to participate in the retiree health care and group life insurance program and executed a health care retiree enrollment card and a group life insurance record card at that time. As a result of his election to retire under the special program, plaintiff received a gross lump sum retirement allowance of $21,000, a Social Security supplement to age sixty-two, and a gross monthly retirement benefit of $1,207.79. Plaintiff continues to receive this monthly benefit.

To recover under former R.C. 4101.17, plaintiff must prove that he was discharged without just cause, that he was between the ages of forty and seventy (now, simply over forty), and that he was physically able to perform the duties and otherwise meet the requirements of the job and laws pertaining to the relationship between employer and employee. In *Barker v. Scovill*, this court identified in paragraph one of the syllabus the elements of the prima facie case that plaintiff was required to make in order to raise a rebuttable presumption that he was discharged because of his age, in violation of the statute: (1) membership in the protected class, (2) discharge, (3)

---

3. Plaintiff was eligible to receive a number of enhancements to his normal retirement benefit. First, the reduction in benefits for early retirement under the normal retirement plan would not apply, so that there would be no reduction in his monthly benefit based on his age and actual retirement date because he had retired early. Second, he would receive a supplemental monthly benefit until he reached age sixty-two or became eligible for Social Security, representing the actuarial equivalent of the Social Security benefit that he could anticipate at age sixty-two. Finally, he would receive a lump sum retirement allowance determined on the basis of his service and salary.

qualification for the position, and (4) replacement by or retention of an employee outside the protected class.

Plaintiff recognizes that one of the elements of his claim under R.C. 4101.17 is that he was "discharged." He also realizes that when the produce sales manager position was eliminated, he was offered a choice between retirement with enhanced benefits and continued employment with Wesco in California. Indeed, he signed numerous papers which show that he chose to retire early, and he has received enhanced retirement benefits because he chose to retire rather than transfer within Wesco. He contests none of these facts. Rather, he argues that his choice was not real and that his separation from the company was a "constructive discharge," that is, he was forced to retire. However, the record does not support his argument.

Plaintiff suggests that he is entitled to prevail based solely upon two isolated memoranda. To him, these memoranda show that the produce sales manager position was eliminated because he was eligible for the special early retirement program. They do not support that conclusion. More importantly, however, the memoranda have nothing to do with one of the essential elements of plaintiff's claim: Was he discharged? Even if the memoranda established discrimination, the undisputed evidence shows that plaintiff was not discharged. When the position was eliminated, he was offered a choice: plaintiff elected to retire from Wesco to receive the enhanced benefits of the special voluntary early retirement program rather than transfer within Wesco or be laid off with normal benefits.

The undisputed facts point to the conclusion that plaintiff, like the plaintiff in *Barker, supra,* was not discharged and replaced, but knowingly chose retirement over other options, and the company should not be liable for merely withdrawing the option most favorable to plaintiff, *i.e.,* that of moving to Florida. This option was removed by the decision of another employee not to take early retirement.

The majority here adopts the plaintiff's position that he is relieved of any obligation to prove the elements of a prima facie claim identified by this court in *Barker* by so-called "direct evidence" that his position was selected for elimination because of his eligibility for early retirement, which he asserts is sufficient proof of a violation of R.C. 4101.17. This is clearly wrong, because the statute proscribes only discharges. Plaintiff was not discharged when the produce sales manager position was eliminated. He was offered a choice: keep working, separate with normal benefits, or retire with enhanced benefits.

The law stated by the majority here, that proof of the essential elements identified in *Barker* is necessary only if one lacks any direct evidence that a decision is based on an employee's age, is untenable for another reason as

well. If an employee had such direct evidence he or she would have less difficulty proving the elements identified in *Barker* than an employee who relies only on indirect or circumstantial evidence. Accordingly, the courts have explained that *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, which this court approved and followed in *Barker*, "set forth an analytical method to examine every intentional discrimination claim, whether it proceeds through an indirect method of proof or through direct, circumstantial, or statistical evidence." *Barnes v. GenCorp, Inc.* (C.A.6, 1990), 896 F.2d 1457, 1464. An employee who has direct evidence that he was in fact *discharged* because of his age will have no difficulty establishing the *McDonnell Douglas* elements: "If the plaintiff was truly singled out for discharge because of age he or she should be able to develop enough evidence through the discovery process or otherwise to establish a prima facie case." *Id.* at 1465–1466. If plaintiff had direct evidence that he was discharged because of his age, and that his discharge permitted the company to keep an employee outside the protected class, then he should have produced depositions, affidavits, and the other evidence permitted by Civ.R. 56(C) to prove these elements of his claim. However, he did not. There simply was *no* direct evidence of the plaintiff's alleged discharge presented here.

Plaintiff did not produce sufficient evidence to create a genuine issue for trial on two elements: a discharge, and that the alleged discharge permitted the retention of an employee outside the protected class. The evidence clearly establishes, as the four judges who have reviewed it in the lower courts have concluded, that plaintiff chose to retire early rather than transfer and keep working or separate with normal benefits, and that even if he was discharged, the discharge did not permit the company to keep an employee outside the protected class. It is undisputed that plaintiff was not replaced: the duties of his job were assumed by other employees in addition to their existing work, and all of those employees occupied higher rated positions and had higher performance ratings. Plaintiff admitted that not all of his duties were given to a younger employee.

There is no reason for this court to reject its holding in *Barker*. Rather, it should be applied to the facts in this case. Summary judgment was properly entered in Kroger's favor because plaintiff failed to produce sufficient evidence to create a genuine dispute of whether he was discharged, and whether such discharge permitted Wesco to retain an employee outside the protected class.

MOYER, C.J., concurs in the foregoing dissenting opinion.

WRIGHT, J., dissenting. I concur with the syllabus law as propounded by the majority. I dissent because I find little relationship between the syllabus law and the result reached by the majority. The majority appears to be so preoccupied with its desired result that it dismisses the findings of the courts below on the grounds that the judges there were "distracted," though by what I cannot tell. Is it not possible—probable, even—that the courts below were not distracted, but were not persuaded that the appellant was the victim of age discrimination? This is the function of a trial judge, the majority to the contrary notwithstanding, and the record certainly supports such a ruling.

The majority relies for its holding *solely* upon a phrase contained in a memo that appellant was "eligible for [the] retirement window." I would agree that an employer, in this litigious age, would not issue a memo to the effect that an employee was to be discharged because he was too old. Further, I will grant that some interpretation of and inferences from circumstances are required in cases such as this one. But the majority seems to view this phrase as a veritable beacon, piercing the legal morass and illuminating the obvious conclusion that appellant was fired. The record simply belies the majority's assertion that the offending phrase noted above is clearcut and dramatic evidence of age discrimination. I trust I am not falling into the trap of being either "mechanized" or (gasp) "ritualistic" in my desire to apply the law to the facts. In a word, I am of the opinion that appellant cannot and did not show that he was ever discharged. He may not have been enthusiastic about his options. The prospect of living in sunny California after a lifetime in the Midwest could well be unnerving. It may have smacked of unfairness to confront appellant with choices that he would have preferred not to make. But none of these considerations singly or in sum rises to the level of a violation of the law against age discrimination. I therefore respectfully dissent.