Deborah J. CLEVIDENCE, Plaintiff,

v.

WAYNE SAVINGS COMMUNITY BANK, Defendant.

No. 5:00–CV–2704.

United States District Court,
N.D. Ohio,
Eastern Division.

May 18, 2001.

· James H. Banks, Dublin, OH, for Deborah J. Clevidence, plaintiff.

Gary W Spring, Roetzel & Andress, Akron, OH, James L. Cole, Roetzel & Andress, Akron, OH, for Wayne Savings Community Bank, defendant.

## OPINION

GWIN, District Judge.

On March 26, 2001, Defendant Wayne Savings Community Bank ("Wayne Bank") filed a motion for summary judgment (Doc. 23). Plaintiff Deborah Clevidence opposes the motion. For the reasons discussed below, the Court grants the defendant's motion for summary judgment.

### I. Background

In this case, Plaintiff Clevidence alleges that Wayne Bank fired her because of her sex and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and Ohio Rev.Code §§ 4112.02 et seq. In support of her claims, Clevidence says Wayne Bank promoted younger and male employees more often even though she was more qualified. In addition, she says a similarly situated male employee received assistance with his duties while Wayne Bank denied her assistance. In arguing that Wayne Bank discriminated against her because of her sex or age, Clevidence points to her positive performance evaluations. Finally, Clevidence says the bank eliminated her senior accountant position and divided her work between two male employees.

In opposition, Defendant Wayne Bank says it fired Clevidence as a senior accountant because she was not adequately performing her job. In addition, Wayne Bank says Clevidence cannot make out a prima fascia case of sex or age discrimination because her replacement was a female employee only three and a half years younger than the plaintiff. Wayne Bank also denies that it promoted younger and male workers in a discriminatory manner.

Plaintiff Clevidence worked for Defendant Wayne Bank, except for a small break in service, since 1972. She began as a teller and held several positions as she worked through the auditing and accounting divisions to a staff accountant position. In early 1993, Wayne Bank changed Clevidence's title from staff accountant to senior accountant. She contends the title change was a promotion since Wayne Bank advertised it as such in the local paper. However, no pay raise accompanied her title change and the staff accountant and senior accountant job descriptions are the same.[1] Both jobs require Clevidence to manage the day to day accounting activities of the bank and prepare regulatory reports.

On the same day Clevidence's title changed, Wayne Bank named Jeffrey Vincent a senior accountant/office services manager of the accounting division. The defendant hired Vincent in 1986 as the office services manager. Before his title change, he helped with various activities in the accounting division. Vincent's title change reflected his continuing service with accounting matters.

Clevidence's personnel file contains performance evaluations from early 1998 and 1999.[2] On both evaluations, Controller Anthony Volpe, Clevidence's immediate supervisor, rates her as "exceeds job requirements" (best of five possible ratings) or "very good performance" (second best rating) on five of the seven performance factors evaluated. She rated "satisfactory performance" on her people contact skills and communication skills in her 1998 evaluation. On the 1999 evaluation, Volpe improved Clevidence's rating on her people contact skills and communication skills, writing in the margin that she demonstrated progress.

Nonetheless, in August 1999, Todd Tappel, the chief financial officer of Wayne Bank, agreed with Volpe's recommendation to terminate Clevidence for job performance reasons. In explaining why Wayne Bank fired Clevidence, Tappel says she made several costly mistakes in July and August of 1999. Specifically, Tappel says Clevidence's failure to provide adequate information to Wayne Bank's independent auditors cost the bank an additional $3,500 in fees. He also says Clevidence did not properly account for and depreciate fixed assets of the bank so that Wayne Bank suffered a $46,551 accounting charge.

In addition, Tappel says Clevidence improperly dealt with a refund check from the Internal Revenue Service ("IRS"). In January 1999, Clevidence did not file a form 945 report (covering withholding retirement accounts) with the IRS. Because

1. In fact, the senior accountant job description submitted to the Court is a staff accountant job description with the word "staff" crossed out in the title and "senior" written in.

2. In the defendant's response to the plaintiff's interrogatories, Wayne Bank says it has performance reviews from February 2, 1998 and February 26, 1991. However, the performance reviews in the record are dated February 2, 1998, and February 26, 1999. The Court assumes the defendant's indication of a performance review from 1991 was a typographical error.

she did not file the form, the IRS mistakenly sent a refund check to Wayne Bank. Tappel says Clevidence received the refund check in late July 1999, but did not attempt to return it before beginning her vacation on August 6, 1999. While Clevidence was on this vacation, Volpe also discovered the cause of Wayne Bank's ongoing problem with biweekly loan fees being understated. This problem resulted from improperly inputted data, not the computer software problem Clevidence had reported.

Further, Tappel says Clevidence often overdrew her personal account at the bank, setting a bad example as an accountant for Wayne Bank. He also says she verified a personal wire transfer for a relative in violation of company policy. Finally, Tappel says Clevidence's reluctance to delegate daily tasks prevented important information from reaching management and she had interpersonal problems with co-workers.

Clevidence disputes Tappel's characterization of each incident. She argues that oversights occurred because she was doing more work then her younger, male counterparts and was held responsible for errors not originating with her. Clevidence never received any official notice of difficulties concerning her co-workers, her dealings with the internal auditors, the allegedly improper wire transfer, or anything to do with her job performance.

On August 23, 1999, Clevidence returned from vacation. Tappel told Clevidence she could not "grow" with the company and gave her two choices. She could resign, and receive a severance payment after signing a release, or be terminated. Clevidence refused to sign a release and Wayne Bank fired her that same day.

Initially, Wayne Bank split Clevidence's responsibilities between employees in the accounting department. Vincent and Volpe performed some of the accounting tasks. Linda Benson also assumed a few of Clevidence's duties within the deposit services department. In addition, Wayne Bank hired a temporary employee for a week to complete a specific fixed asset subsidiary records project. Approximately a month after Clevidence's firing, the defendant promoted Sharon Scale from within the accounting division to a staff accountant position and she took over Clevidence's principle duties and responsibilities. Wayne Bank then hired a new employee to fill Scale's former position.

Clevidence was forty-six years old when the defendant fired her. Scale was forty-three years old when promoted to the staff accountant position.

On October 6, 1999, Plaintiff Clevidence filed a charge of age and sex discrimination with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission ("EEOC"). On August 23, 2000, the EEOC issued a right to sue letter. On October 22, 2000, the plaintiff filed the present case. The Court discusses the defendant's motion below.

## II.  Legal Standard

A court may grant summary judgment only if the materials properly before the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). In deciding whether the moving party has met this burden, a court must view the facts and all inferences drawn from them in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

A factual dispute precludes summary judgment only if it is material, that is, if it relates to a matter essential to adjudication. The dispute must concern facts that, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if proven at trial a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street,* 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505.

### III. Analysis

The plaintiff alleges age and sex discrimination under the ADEA and Title VII. She also alleges age and sex discrimination under Ohio Rev.Code §§ 4112.02 et seq. Both the federal and state claims for age and sex discrimination are analyzed using the *McDonnell Douglas* standard. *Sherman v. American Cyanamid Co.,* 996 F.Supp. 719, 724–25 (N.D.Ohio 1998); *Kohmescher v. Kroger Co.,* 61 Ohio St.3d 501, 504, 575 N.E.2d 439, 441–42 (1991); Therefore, the Court combines its analysis of Clevidence's federal and state claims for age and sex discrimination.

### A. Adequacy of the EEOC Charge

■ As a preliminary matter, the Court dismisses the parts of Clevidence's age and sex discrimination claims that allege Wayne Bank denied her assistance it gave to younger and male employees. A district court does not have subject matter jurisdiction to hear an ADEA or Title VII claim unless the claimant explicitly filed the claim in an EEOC charge or the claim can reasonably be expected to grow out of an EEOC charge. *Abeita v. Trans-America Mailings, Inc.,* 159 F.3d 246, 254 (6th Cir.1998); *Davis v. Sodexho Cumberland Coll. Cafeteria,* 157 F.3d 460, 463 (6th Cir.1998). The purpose of filing a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC so the Commission can attempt to obtain voluntary compliance with the law. *Davis,* 157 F.3d at 463. The EEOC's investigatory and conciliatory procedures notify potential defendants of the nature of a plaintiff's claims and provide them the opportunity to settle the claims before the EEOC rather than litigate them. *Id.*

In this case, Clevidence's EEOC charge alleges age and sex discrimination only regarding her firing. While she mentions a 1995 event where Wayne Bank disciplined her and allegedly not others, Clevi-

dence does not allege she was discriminated against because Wayne Bank denied her promotions or job assistance. Nor could the defendant reasonably expect such a claim from the allegations set forth in the EEOC charge.

Nothing in the EEOC charge notifies Wayne Bank that Clevidence had other grievances against the bank besides her firing. Therefore, the Court holds that the plaintiff has not exhausted her administrative remedies with respect to her allegations that Wayne Bank denied her promotions and job assistance given to younger and male employees. The Court does not have subject matter jurisdiction to hear these aspects of Clevidence's age and sex discrimination claims.

### B. Age Discrimination

Under the ADEA it is unlawful for an employer to discharge any individual 40 years of age and older or otherwise discriminate against that person with respect to compensation, terms, conditions, or privileges of employment "because of such individual's age." 29 U.S.C. § 623(a). An employer can violate the ADEA when it prefers a younger employee, even if that younger employee is within the protected class of workers aged 40 and over. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1466 (6th Cir.1990); *see also O'Connor v. Consolidated Coin Caterer's Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

■ Since the plaintiff gives the Court no direct evidence of age discrimination, she must make the showing described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1180 (6th Cir.1983) (courts should allocate burden of proof in ADEA cases according to *McDonnell Douglas–Burdine* analysis the Supreme Court adopted for Title VII cases).[3]

A plaintiff establishes a prima facie case of age discrimination by showing: 1) that she is a member of a protected group; 2) that she was subject to an adverse employment decision; 3) that she was qualified for the position; and 4) that she was replaced by a younger person. *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 420 (6th Cir.1999).

If the plaintiff makes out a prima facie case, the burden shifts to the employer to describe a legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817; *Barnes*, 896 F.2d at 1466. If the employer gives a legitimate, nondiscriminatory reason for the employment action then the employee must show the employer's stated reason is pretextual. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817; *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365 (6th Cir.1999).

**3.** The *McDonnell Douglas* formula is inapplicable, however, to cases in which the Title VII or age discrimination plaintiff presents credible, direct evidence of discriminatory animus. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir.1985). In her deposition, the plaintiff says she took Tappel's comment about her being unable to "grow" with the company as a reference to her age. However, the plaintiff does not develop this argument in her opposition to summary judgment.

Furthermore, "direct evidence is that evidence, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering Plough Healthcare Prods.*, 176 F.3d 921, 926 (6th Cir.1999). Tappel did not refer to Clevidence's age or say she was being fired because of her age. An isolated and ambiguous comment is not enough to create direct evidence of age discrimination. *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir.1993).

Although the burden of production shifts, Clevidence retains the ultimate burden of persuading the trier of fact that intentional discrimination occurred. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 518, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citation omitted). The plaintiff must not only establish a prima facie case, but must also show that age "was a determining factor" in Wayne Bank's adverse decision. *Stein v. National City Bank*, 942 F.2d 1062, 1064 (6th Cir.1991).

The plaintiff meets the first and second elements of her prima facie case. Since Clevidence was forty-six years old when fired she clearly is a member of a protected group and suffered an adverse employment decision.

■ The defendant argues Clevidence fails to meet the third and fourth prongs of her prima facie case. Wayne Bank asserts that the plaintiff was not qualified for her senior accountant position and has not shown that a substantially younger person replaced her. The Court holds that Clevidence was qualified for the senior accountant position she held.[4] However, Clevidence does not show that a person young enough to create an inference of age discrimination replaced her.

■ In order to prove the fourth element, the plaintiff must show she was replaced by an individual "substantially younger" than herself. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir.1998). In

*Bush*, the United States Court of Appeals for the Sixth Circuit held as follows:

> Assuming that Bush met the first three prongs of the *McDonnell Douglas* test, he was then required to show that he was replaced by someone "substantially younger." When Bush was demoted, he was replaced by a woman less than five years younger, who was herself more than forty years old. The district court held that such a small age gap did not meet the "substantially younger" standard. In the absence of any proof to the contrary, we agree that no reasonable jury could find that Bush's 41 year old replacement was "substantially younger" than Bush (then 46 years old). As a result, with regard to his demotion, Bush failed to make out a prima facie claim under *McDonnell Douglas*.

*Id.; see also Williams v. Raytheon Co.*, 220 F.3d 16, 20 (1st Cir.2000) (three year age difference is too insignificant to support a prima facie case of age discrimination); *Hoffmann v. PRIMEDIA Special Interest Publications*, 217 F.3d 522, 524–25 (7th Cir.2000) (plaintiff failed to establish prima facie case of age discrimination where replacement was only three years younger); *Schiltz v. Burlington N.R.R.*, 115 F.3d 1407, 1413 (8th Cir.1997) (five year age difference not enough to make out a prima facie case for age discrimination).

After Wayne Bank fired Clevidence, Scale replaced her. Scale was forty-three years old at the time she replaced Clevi-

---

4. In its recent decision in *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir. 2000), the Sixth Circuit cautioned that the courts must not use the "qualified" element of the *prima facie* case in order to heighten the plaintiff's initial burden. *Cline*, 206 F.3d at 660–66. In an effort to ensure that the first two stages of the *McDonnell Douglas* inquiry remain analytically distinct, and that a plaintiff's initial burden not be too onerous, *Cline* requires that the "qualified" prong of the prima facie case be evaluated in light of the plaintiff's employment record "prior to the onset of the events that the employer cites as its reason" for its decision. *Id.* at 662–63. Clevidence held her senior accountant position since 1993 and her two most recent evaluations were complimentary of her work. Therefore, she was "qualified" for the senior accountant position for the purpose of making a prima facie case.

dence, only three and a half years younger than the plaintiff. Under *Bush* and similar decisions from other circuits, a three year difference in age is not sufficient to create a prima facie case of age discrimination.

In response, the plaintiff says Scale was not her replacement. Clevidence argues that after she was fired, her duties were first assigned to a temporary female employee and then given to two male employees.

The plaintiff's argument lacks merit. The first person who dealt with Clevidence's responsibilities after her firing does not become a "replacement" for the purpose of her prima facie case. A person is considered "replaced" when another employee is hired or reassigned to perform the plaintiff's duties. *Barnes*, 896 F.2d at 1465. There is no factual dispute that a temporary employee worked on one of the plaintiff's projects in the week following her termination. Likewise, there is no dispute Clevidence's responsibilities were initially split between Volpe, Vincent, and Benson. However, there is uncontradicted deposition testimony by chief financial officer Tappel that within approximately a month of Clevidence's departure Wayne Bank promoted Scale from within the accounting division to take over Clevidence's former duties.

The fact that Scale's job title was staff accountant instead of senior accountant is immaterial. Tappel and Clevidence's testimony establishes the responsibilities of the positions were the same. Only the titles differed. Wayne Bank clearly replaced Clevidence within a month of her termination. Since Clevidence's replacement was not substantially younger than herself, she fails to make out a prima facie case. The Court grants the defendant summary judgment on the age discrimination claims.

## C. Sex Discrimination

■ In order to prove a prima facie case of disparate treatment under Title VII, a plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified for the job; (3) an adverse employment action was taken against her; and (4) she was replaced by someone outside the protected class, or treated differently than similarly situated non-protected employees. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *see also Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 728–29 (6th Cir.1999); *Kirkland v. St. Elizabeth Hosp.*, 120 F.Supp.2d 660, 665–66 (N.D.Ohio 2000).

As previously discussed, Scale replaced Clevidence. As both Clevidence and Scale are women, the plaintiff cannot make out a prima facie case for sex discrimination since her replacement is a member of a protected class.

■ However, the plaintiff also asserts a sex discrimination claim because a male employee received assistance in performing his job responsibilities. Clevidence says Wayne Bank discriminated against her based on sex because it gave Vincent an assistant and did not give an assistant to her.

Even if this aspect of Clevidence's sex discrimination claim were properly before the Court, she fails to make out a prima facie case for sex discrimination because she is not similarly situated to Vincent. A similarly situated person is one whose employment situation is nearly identical in all relevant aspects to the plaintiff's. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998) (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994)). The Court must make an independent determination of the relevancy of different aspects of the employment status of the plaintiff and the non-protected employee. *Id.*

The Court holds that Vincent is not a similarly situated to Clevidence. While both performed senior accountant duties, Vincent was also the office services manager for all of Wayne Bank's branches. Tappel's uncontradicted affidavit says Vincent's assistant helped him with his office services manager responsibilities. The plaintiff points to no evidence in the record to show Vincent received assistance with his senior accountant duties that Wayne Bank denied to her. Therefore, the Court grants the defendant summary judgment on the sex discrimination claims.

## IV.   Conclusion

For the reasons stated above, the Court grants Defendant Wayne Bank's motion for summary judgment. Plaintiff Clevidence's claims are dismissed.

IT IS SO ORDERED.

## JUDGMENT

The Court has entered its opinion granting Defendant Wayne Savings Community Bank's motion for summary judgment. For the reasons stated therein, the Court dismisses Plaintiff Deborah J. Clevidence's claims asserted in her complaint. The Court hereby certifies that this case is terminated under Fed.R.Civ.P. 58.

IT IS SO ORDERED.